IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CARLTON AKEE TURNER, | § |
| | § |
| Petitioner, | § |
| | § |
| VS. | § |
| | § Civil Action No. 3:04-CV-2232-D |
| | § |
| DOUGLAS DRETKE, Director, Texas | § |
| Department of Criminal Justice, | § |
| Institutional Division, | § |
| | § |
| Respondent. | § |

MEMORANDUM OPINION
AND ORDER

Petitioner Carlton Akee Turner ("Turner"), convicted and sentenced to death for capital murder, petitions the court for a writ of habeas corpus based on seven claims. The court holds that one claim is procedurally barred and that Turner is not otherwise entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. The court therefore denies Turner's petition for a writ of habeas corpus and dismisses this action with prejudice.

I

The background facts of Turner's case are described by the Texas Court of Criminal Appeals in its published opinion on direct appeal. *See Turner v. State*, 87 S.W.3d 111, 113 (Tex. Crim. App. 2002), *cert. denied*, 538 U.S. 965 (2003). The court adds to that discussion pertinent trial evidence and procedural history necessary to understand the court's disposition of this petition.

On the morning of August 8, 1998, 19-year old Turner shot and killed both of his parents in their home in Dallas, Texas, where he also resided. *Id.* After moving their bodies to the garage, he went shopping with his parents' cash and credit cards. *Id.* Turner was tried for and found guilty of capital murder. *Id.* Based on the jury's answers to the two punishment-phase special issues, the trial court sentenced Turner to death. *Id.* The Texas Court of Criminal Appeals affirmed his conviction and sentence on direct appeal on July 12, 2002, *id.* at 118, and the Supreme Court of the United States denied his petition for a writ of certiorari on April 7, 2003, *see Turner v. Texas*, 538 U.S. 965 (2003).

While the direct appeal was pending in the Texas Court of Criminal Appeals, Turner applied on September 28, 2001 for a writ of habeas corpus in the state habeas court.[1] After determining that there were no controverted, previously unresolved factual issues requiring a hearing, the state habeas court on September 13, 2002 entered its findings of fact and conclusions of law, recommending that all relief be denied. *See Ex parte Turner*, No.

---

[1]Pursuant to Tex. Code Crim. Proc. Ann. art. 11.071 § 4(a) (Vernon Supp. 2006), "[a]n application for a writ of habeas corpus . . . must be filed in the convicting court not later than the 180th day after the date the convicting court appoints counsel . . . or not later than the 45th day after the date the state's original brief is filed on direct appeal with the court of criminal appeals, whichever date is later."

W99-00220-MS(A) (282nd Dist. Ct., Dallas County, Tex.).[2]   On September 29, 2004 the Texas Court of Criminal Appeals denied relief in an unpublished order based on the state habeas court's findings and conclusions and on its own review of the record. *Ex parte Turner*, No.59,908-01 (Tex. Crim. App. Sept. 29, 2004) (per curiam).

On October 15, 2004 Turner filed in this court a motion for appointment of counsel and, subsequently, a motion to proceed *in forma pauperis*, each of which the court granted. On May 25, 2005 he filed the instant petition for a writ of habeas corpus. Turner seeks relief on the following seven grounds:[3]

> 1. Turner was denied effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, by his trial counsels' failure to object during the State's voir dire of prospective jurors that the parole laws that required him to serve at least 40 actual years prior to parole eligibility were subject to change in the event he received a life sentence.

---

[2]Throughout the remainder of this opinion, except as the context otherwise requires, the court will refer to the "state habeas court" as a single tribunal, although it recognizes that the Texas Criminal Court of Appeals independently determined that habeas relief should be denied.

[3]Relying on *Ex parte Ramos*, 977 S.W.2d 616 (Tex. Crim. App. 1998) (en banc), the state habeas court held that all but two of Turner's grounds for relief were procedurally barred because they were then being litigated on direct appeal. *See* State Hab. Find. Nos. 4, 50, 72, 88, 98. Respondent conceded at oral argument before this court that it does not rely on this procedural bar, and the court need not address it before reaching the merits of Turner's petition. *See Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999) ("A state waives a procedural bar defense by failing to raise the defense in the district court.").

2.    The State's instructions to eight jurors that the
      40-year minimum for parole eligibility may not
      apply to Turner in the future because the parole
      laws might change deprived him of his rights
      pursuant to the Eighth and Fourteenth Amendments to
      the United States Constitution to such a degree
      that he was deprived of a fair and impartial trial.

3.    The trial court's instructions to the jury that
      they were not to consider the actual amount of time
      Turner would have to serve in arriving at their
      verdict deprived him of a fair and impartial trial,
      in violation of the Due Process Clause of the
      Fourteenth Amendment and the Eighth Amendment of
      the United States Constitution.

4.    The trial court's instructions to the jury at the
      punishment phase of Turner's trial, which failed to
      define vague terms in the special issues submitted
      to the jury, violated his right to a fair and
      impartial trial, in violation of the Due Process
      Clause of the Fourteenth Amendment and the Eighth
      and Sixth Amendments to the United States
      Constitution.

5.    The Texas death penalty statute, which fails to
      inform jurors that the effect of the jury's failure
      to reach a unanimous verdict on any issue at the
      punishment phase of the trial would result in a
      life sentence, fundamentally violated Turner's
      rights against cruel and unusual punishment and to
      due process of law, under the Eighth and Fourteenth
      Amendments to the United States Constitution.

6.    Dallas County's venire selection process violated
      his rights to an impartial jury consisting of a
      representative cross-section of the community,
      under the Sixth and Fourteenth Amendments to the
      United States Constitution.

7.    The cumulative effect of the above-enumerated
      constitutional violations denied him due process of
      law, in violation of the Fifth and Fourteenth
      Amendments to the United States Constitution, even
      if no separate infraction by itself rose to that
      magnitude.

Respondent answered on August 15, 2005.   Turner filed his

- 4 -

reply brief on October 11, 2005.  The court heard oral argument on March 10, 2006.

II

A

Turner's habeas petition is governed by AEDPA.  28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim——
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*  This court's determination requires deference to the state habeas court's adjudication of Turner's claim unless the adjudication is flawed under at least one of these provisos.  *See, e.g., Kutzner v. Johnson*, 242 F.3d 605, 608 (5th Cir. 2001); *Wheat v. Johnson*, 238 F.3d 357, 360 (5th Cir. 2001).  "[A] federal court's review of a claim adjudicated in a state court is deferential . . . ."  *Summers v. Dretke*, 431 F.3d 861, 868 (5th Cir. 2005).

> Under the "contrary to" clause [of §
> 2254(d)(1)], a federal habeas court may grant
> [a writ of habeas corpus] if the state court
> arrives at a conclusion opposite to that
> reached by [the Supreme Court of the United
> States] on a question of law or if the state
> court decides a case differently than [the
> Supreme Court] has on a set of materially
> indistinguishable facts.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A 'run-of-the-mill state-court decision applying the correct legal rule' would *not* fit within this exception as 'diametrically different' or 'opposite in character or nature' from Supreme Court precedent." *Beazley v. Johnson*, 242 F.3d 248, 256 (5th Cir. 2001) (quoting *Williams*, 529 U.S. at 406).

"Under the 'unreasonable application' clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "A state court's decision will be based on an unreasonable application of clearly established federal law when it is objectively unreasonable." *Kutzner*, 242 F.3d at 608. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S.

- 6 -

at 410.  "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.  "[A] federal court is not to substitute its judgment for that of the state court.  Rather under AEDPA, federal habeas relief is proper only if the state habeas court applied federal law in an 'objectively unreasonable' manner."  *Schaetzle v. Cockrell*, 343 F.3d 440, 447 (5th Cir. 2003).

Moreover, "'a federal habeas court is authorized by Section 2254(d) to review only a state court's "decision," and not the written opinion explaining that decision.'"  *Summers*, 431 F.3d at 868 (quoting *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (per curiam) (en banc)).  When, as here, the Texas Court of Criminal Appeals denies a habeas petition without written order on findings of the trial court, this court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law."  *Schaetzle*, 343 F.3d at 443 (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002); *Robertson v. Cain*, 324 F.3d 297, 303 (5th Cir. 2003)).

"Factual findings of the state court are presumed to be correct . . . ." *Gardner v. Johnson*, 247 F.3d 551, 557 (5th Cir. 2001). A federal habeas court must "defer to them unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id.* (internal quotation marks omitted) (quoting *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000)). "When challenging a state court's factual determinations, a petitioner must rebut this presumption of correctness by 'clear and convincing evidence.'" *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998) (quoting 28 U.S.C. § 2254(e)(1)).

B

Turner argues in his brief, and he emphasized at oral argument before this court, that the state habeas court did not "adjudicate" his claims within the meaning of 28 U.S.C. § 2254(d). He bases this argument on the fact that, despite his request for a hearing, the state habeas court did not hold one, did not, as allowed by Texas law, require affidavits, depositions, or interrogatories to resolve any factual allegations that he raised, and adopted verbatim the State's proposed findings of fact and conclusions of law. Turner maintains on this basis that this court should evaluate his claims without the deference usually accorded state findings. The court disagrees.

In a June 19, 2002 order, the state habeas court declined to

- 8 -

convene a hearing because it found "that there are no controverted, previously unresolved facts material to the legality of [Turner's] confinement which require an evidentiary hearing." R. 84.  It provided the parties 30 days' notice that it would decide his application after considering proposed findings of fact and conclusions of law and without hearing oral argument.  Turner does not explicitly contest the validity of the finding that no hearing or additional evidence was necessary and, given the nature of the claims before this court that are not procedurally defaulted (i.e., claims 1-5 and 7), it does not appear that any claim necessitated an evidentiary hearing because the factual predicates for the claims are evident from the trial record.

Moreover, even if the court assumes there are contested fact issues, the rule is well settled that the presumption of correctness of § 2254(d) is not affected merely because the state habeas court conducts a paper hearing.  *Carter v. Johnson*, 131 F.3d 452, 460 n.13 (5th Cir. 1997).  Findings based exclusively on affidavits are generally sufficient to warrant the presumption.  *Id.* (citing cases).  This is particularly true when, as here, the state habeas judge is the same judge who presided at trial.  *See May v. Collins*, 955 F.2d 299, 314 (5th Cir. 1992) (discussing state hearing as full and fair under pre-AEDPA standard).  Ultimately, each case must be judged on its own facts.  *Carter*, 131 F.3d at 460 n.13 ("'[I]t is necessary to examine in each case whether a paper

hearing is appropriate to the resolution of the factual disputes underlying the petitioner's claim.'") (quoting *May*, 955 F.2d at 312)).

Finally, the Fifth Circuit has rejected the contention that habeas findings adopted verbatim from those submitted by the State are not entitled to deference. *See Nichols v. Scott*, 69 F.3d 1255, 1277 (5th Cir. 1995) (relying on *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 571 (1985), in which the Supreme Court stated that, "even when the trial judge adopts the proposed findings verbatim, the findings . . . may be reversed only if clearly erroneous."); *see also Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (rejecting due process challenge to state habeas court's verbatim adoption of district attorney's proposed findings of fact and conclusions of law only three hours after they were filed with court); *James v. Collins*, 987 F.2d 1116, 1122-23 (5th Cir. 1993) (rejecting challenge to according deference to habeas findings by Texas court that were adopted verbatim under pre-AEDPA federal habeas statute).

Accordingly, the court will review the state habeas court's findings of fact and conclusions of law with the deference to which they are entitled under AEDPA.

III

In two related claims, Turner challenges the State's comments during voir dire about the possibility of changes in Texas parole law.  In claim 1 he maintains that his trial counsels' failure to object to these comments deprived him of his right to effective assistance of counsel.

A

During voir dire the State discussed with prospective jurors the issue of parole eligibility.  It stated that the trial court would instruct them not to consider parole eligibility in deciding Turner's punishment.  Both the State and Turner advised the jury that Texas law required that, if Turner was convicted and sentenced to life in prison, he would serve at least 40 actual calendar years, without consideration for good time, before he would be eligible for parole.  Turner complains that the State went beyond explaining the applicable law, beyond determining whether veniremembers could follow the law, and explained to persons who later became trial jurors that the reason the trial court would instruct them not to consider the 40-year minimum was that the Texas Legislature could change the law at any time, thereby making the minimum inapplicable to Turner.  He also maintains that the prosecutor exacerbated the error by attesting to several changes in the parole laws that he had seen during his tenure and suggesting that it could reasonably be expected that there would be other

changes.   Turner posits that this approach resulted in the State's
instructing the jury contrary to existing parole law that it knew
would be included in the punishment phase jury charge.

Turner asserts that Texas law precluded the State from arguing
contrary to the law contained in the jury instructions and from
inviting jurors to disregard the law.   Relying on *Burton v. State*,
No. 73,204 (Tex. Crim. App. Oct. 25, 2000) (unpublished opinion),[4]
he argues that the State encouraged the jury to disregard the trial
court's instructions and compounded its error by telling several
veniremembers who became jurors that the trial court's instruction
to disregard the 40-year minimum was based on the fact that the law
could change.   Turner posits that the State invited, if not
encouraged, these jurors to disregard the law completely and to
consider the 40-year eligibility law to be meaningless.   He argues
that this is significant because half his jury deliberated while
under the clear impression that he might not serve 40 calendar
years before being released.   Turner posits that, if even one of
the six discussed this with other jurors, the entire jury may have
been infected.

The state habeas court for several reasons denied Turner's
ineffective assistance of counsel claim.   In relevant part, it

_____

[4]The opinion issued in *Burton* on October 25, 2000 was
withdrawn on rehearing and replaced by another unpublished opinion
in *Burton v. State*, No. 73,204 (Tex. Crim. App. March 7, 2001) (on
rehearing) (unpublished opinion).   *See Turner*, 87 S.W.3d at 115
(addressing procedural history of *Burton*).

found that Turner had failed to meet the first prong of *Strickland v. Washington*, 466 U.S. 668 (1984), which required that he show deficient performance by his counsel in failing to object to the prosecution's parole remarks.   State Hab. Find. Nos. 37-39. Specifically, it found that to establish that his counsel were ineffective for failing to lodge an objection, Turner was obligated to demonstrate that the trial court would have erred in overruling the objection, *id.* at 6.   The court also found that Turner had failed to show that his counsels' objection would have been properly sustained, *id.* at 36, or that an objection would have been improperly overruled, because he did not demonstrate that "the prosecutor's comment was an inappropriate explanation of [the trial court's] parole law instruction," *id.* at 11.   It ultimately found that Turner's counsel were "not deficient for failing to object to the prosecutor's parole remarks."   *Id.* at 39.

B

"If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Yarborough v. Gentry*, 524 U.S. 1, 5 (2003) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)).   "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not

- 13 -

only erroneous, but objectively unreasonable." *Id.* (citing cases).

"The clearly established federal law that sets the standard for ineffective assistance claims is *Strickland v. Washington* . . . ." *Catalan*, 315 F.3d at 492. Under the *Strickland* test the following showing is necessary to demonstrate ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

> To establish ineffectiveness, a defendant must show that counsel's representation fell below an objective standard of reasonableness. To establish prejudice he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Williams*, 529 U.S. at 390-91 (internal citations and quotation marks omitted) (quoting *Strickland*, 466 U.S. at 688, 694). If Turner fails to meet either prong of the *Strickland* test, the court need not address the other component. *See Strickland*, 466 U.S. at 697; *Carter*, 131 F.3d at 463 ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective

assistance claim.").

Courts "indulge a strong presumption" that counsel's conduct falls within the range of reasonable assistance. *Strickland*, 466 U.S. at 689. Courts must "not fall prey to 'the distorting effect of hindsight' but must be 'highly deferential' to counsel's performance." *Carter*, 131 F.3d at 463 (quoting *Strickland*, 466 U.S. at 689-90). Moreover, when a defendant seeks a writ of habeas corpus based on ineffective assistance,

> [i]t bears repeating that the test for federal habeas purposes is *not* whether [Turner] made that showing. Instead, the test is whether the state court's decision—that [Turner] did *not* make the *Strickland*-showing—was contrary to, or an unreasonable application of, the standards provided by the clearly established federal law (*Strickland*), for succeeding on his [ineffective assistance] claim.

*Schaetzle*, 343 F.3d at 444.

C

To understand why Turner's ineffective assistance claim fails on federal habeas review, it is necessary to clarify at the outset the predicate for the claim. Although this ground of his petition is perhaps influenced by the rationale for, and the arguments made in support of, related claim 2 (and perhaps claim 3), Turner's first claim is based on the premise that his trial counsel were ineffective for failing to object to conduct that he contends violated *Texas law*. This is pellucid from reading his brief. Apart from reciting his right under federal and state law to

effective assistance of counsel, the balance of the argument in support of claim 1 is based on the premise that the State's comments violated Texas law. *See* P. Br. 6-8.

To succeed in this court on his ineffective assistance claim, he must show that the state habeas court's decision that he did not satisfy the first prong of *Strickland* was contrary to, or an unreasonable application of, the standards provided by the clearly established federal law (i.e., *Strickland*). Because Turner relies on Texas law to argue that his counsel were ineffective, he cannot make this showing unless he can demonstrate as a threshold matter that their objections to the prosecution's parole statements would have had merit under Texas law. His counsel could not have been constitutionally ineffective if their objections to such comments would not have been sustainable. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (holding that failure to make frivolous objection does not cause counsel's performance to fall below objective standard of reasonableness); *McCoy v. Lynaugh*, 874 F.2d 954, 963 (5th Cir. 1989) (same). Turner cannot meet this requirement.

The Texas Court of Criminal Appeals explicitly rejected on direct appeal Turner's contention "that his counsel were ineffective for not objecting to the prosecution's voir dire comments to several veniremembers and eventual jurors that the jury could not consider a life-sentenced appellant's parole eligibility

- 16 -

because of possible future legislative changes to the parole laws."
*Turner*, 87 S.W.3d at 113; *see also id.* at 116 (overruling this
claim of error).   It also rejected his argument "that these
prosecutorial comments were also 'fundamental error' because they
denied him a fair punishment hearing under the Eighth and
Fourteenth Amendments."   *Id.* at 113; *see also id.* at 116
(overruling this claim of error).   The court recounted the
prosecution's statements to three jurors as typifying the comments
to which Turner objected.   *Id.* at 113-15.   It began by rejecting
his reliance on the court's unpublished *Burton* opinion because the
decision had been withdrawn and the replacement opinion was also
unpublished and thus lacked precedential value.   *Id.* at 115.   After
examining the State's comments in the context of the entire voir
dire, the court held that "[o]n this record, we cannot say that
counsel was ineffective for failing to object to the prosecutor's
voir dire comments since, viewed in the context of the entire voir
dire, they were not objectionable." *Id.* at 116 (citing *Strickland*,
466 U.S. at 687-94).

Accordingly, in this case there is an authoritative
determination by the highest criminal court of the State of Texas
that Turner's counsels' objections, had they been made, would have
lacked merit.   It follows that his counsel could not have rendered
ineffective assistance by failing to interpose the objections, and
Turner has failed at a threshold level to show that the state

habeas court's decision rejecting this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

IV

In claim 2 Turner contends that the prosecution's statements deprived him of a fair and impartial trial, in violation of the Eighth Amendment prohibition against arbitrary imposition of the death penalty and Fourteenth Amendment guarantee of due process.

A

Turner contends that the State's comments implied that, despite the trial court's instruction that he would serve at least 40 years if assessed a life sentence,[5] the instruction might "be a

---

[5]The trial court instructed the jury:

> You are instructed that under the law applicable to this case, if the defendant is sentenced to imprisonment in the Institutional Division of the Texas Department of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals 40 years, without any consideration of good conduct time. It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those laws will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee that parole will be granted.

*Turner*, 87 S.W.3d at 116.

complete sham," P. Br. 8, because Texas parole law could change, and Turner might serve a shorter sentence before becoming eligible for release on parole.  He maintains that under *Simmons v. South Carolina*, 512 U.S. 154 (1994) (plurality opinion), "due process affords a capital defendant the right to answer future dangerousness allegations with accurate information regarding their parole ineligibility."  P. Br. 8.  Turner reasons that the prospective jurors should not have been told during voir dire that, in assessing future dangerousness, they would not be allowed to consider that the defendant would serve at least 40 calendar years before becoming eligible for parole, and that the reason they could not consider this is that the law could change, making the 40-year minimum inapplicable.  According to Turner, because under *Simmons* the actual duration of the period of incarceration is indisputably relevant when the jury considers future dangerousness, the prosecution should not be allowed to convey that the 40-year minimum may never apply if a life sentence is assessed.  He reasons that, although the jury was informed of the 40-year minimum, "this information was sabotaged where six of the jurors were then told that the reason they could not consider that minimum was that the jury could not count on that minimum ever being applied to [him]."  *Id.* at 10.  Turner concludes that capital defendants are entitled to an opportunity for each juror to consider and give effect to circumstances that mitigate against imposition of the death

sentence.   Informing jurors that they could not consider the 40-year minimum, because it might not apply, is inconsistent with the principle that due process guides the path that leads to a sentence of death.   Therefore, the information the prosecution provided jurors violated his Eighth and Fourteenth Amendment rights, as interpreted by the Supreme Court in *Simmons*.[6]

The state habeas court rejected Turner's claim.   In pertinent part, it found that his argument was not factually correct, that the prosecution's statements reinforced the trial court's instruction that Turner would not be released for at least 40 years, and that the prosecutor confirmed to each juror that the 40-year minimum period applied.   *See* State Hab. Find. Nos. 53-55.   It also found that the comments "actually conformed to the jury charge and did not violate the Eighth Amendment or the Supreme Court ruling in *Simmons*."   *Id.* at 64.

In particular, the court found that the prosecution's statements that the parole laws might change neither undermined the stated 40-year minimum, *id.* at 56, nor that Turner showed that they sabotaged the trial court's instructions about the 40-year minimum *id.* at 63.   According to the state habeas court, the prosecution's

---

[6]Although Turner posits that both his Eighth and Fourteenth Amendment rights, as interpreted by *Simmons*, were violated, the Supreme Court in *Simmons* considered only the Due Process Clause of the Fourteenth Amendment.   *Simmons*, 512 U.S. at 156.   In fact, in *Simmons* the plurality expressly declined to reach the Eighth Amendment issue.   *Id.* at 162 n.4.

purpose in telling the prospective jurors that the law might change may well have been to give them a rational basis to follow the court's instruction not to speculate on how much, beyond 40 years, the defendant would actually serve. *Id.* at 57. The prosecutor merely stated the recognized truth about parole statutes that they are frequently amended, never suggested that the jurors ignore the 40-year minimum, and instead reinforced the court's instruction that Turner would be incarcerated for the first 40 years of a life sentence. *Id.* at 58.

The state habeas court also found that *Simmons* was inapplicable to Turner's case because *Simmons* applies only to defendants who are parole ineligible; the Supreme Court, in *Ramdass v. Angelone*, 530 U.S. 156 (2000) (plurality opinion), expressly refused to extend the rationale of *Simmons* to cases where the defendant is parole eligible; and Turner was eligible for parole, if given a life sentence. State Hab. Find. Nos. 59-60.[7]

---

[7]Effective September 1, 2005 a defendant found guilty of a capital felony in a case in which the prosecution seeks the death penalty is no longer entitled under Texas law to parole, if given a life sentence. *See* Tex. Penal Code Ann. § 12.31(a) (Vernon Supp. 2005). The Texas Criminal Procedure was also amended to reflect this change. *See* Tex. Code Crim. Proc. Ann. art. 37.071 § 2(e)(2)(B) (Vernon Supp. 2005). The amended statute provides that the court must charge the jury in capital cases "that a defendant sentenced to confinement for life without parole under this article is ineligible for release from the department on parole." *Id.*

B

1

Turner's claim must be rejected at a preliminary level.  A fundamental premise of this claim is that the prosecution informed eight veniremembers who became trial jurors that Texas parole law could change and that Turner might serve a sentence shorter than 40 years.  The state habeas court specifically found that this claim was not factually correct, that the prosecution's statements reinforced the trial court's instruction that Turner would not be released for at least 40 years, and that the prosecutor confirmed to each juror that the 40-year minimum period applied.  In support, the court cited statements that the prosecution made to each of the eight veniremembers in question.  *See* State Hab. Find. No. 54.  The court also found that the prosecutor merely stated the recognized truth about parole statutes that they are frequently amended, never suggested that the jurors ignore the 40-year minimum, and instead reinforced the court's instruction that Turner would be incarcerated for the first 40 years of a life sentence.  It also found that the comments actually conformed to the jury charge.

This court must presume that these factual findings are correct, and Turner is obligated to rebut this presumption of correctness by clear and convincing evidence.  *See, e.g., Summers*, 431 F.3d at 868 (holding that state court's factual findings are presumed to be correct and that, in federal court, petitioner has

burden to rebut this presumption with clear and convincing evidence). Turner has made no attempt in his habeas petition or brief to demonstrate clear error. Accordingly, claim 2 must be denied on the ground that Turner's allegations concerning what the prosecution told the prospective jurors is not factually supported by the trial record.

2

Even if the court assumes *arguendo* that Turner has shown clear error and that the factual predicate for his claim is established, claim 2 also fails because the state habeas court did not unreasonably apply clearly established federal law, as determined by the Supreme Court of the United States. The state habeas court found *Simmons* to be inapplicable because it pertains only to defendants who are parole ineligible, and Turner was eligible for parole. It concluded that the Supreme Court expressly refused in *Ramdass* to extend the rationale of *Simmons* to cases where the defendant is parole eligible. Turner relies on *Simmons* as the source of clearly established law that grants a capital defendant a due process right to answer future dangerousness allegations with accurate information regarding parole eligibility, and that the length of his potential incarceration if given a life sentence is indisputably relevant to the issue of future dangerousness. *See* P. Br. 8-10. The state habeas court did not unreasonably apply clearly established federal law, as determined by the Supreme Court

of the United States, in concluding that *Simmons* does not apply in this case, in which Turner would have been eligible for parole if given a life sentence.   "*Simmons* applies only to instances where, as a legal matter, there is no possibility of parole if the jury decides the appropriate sentence is life in prison." *Ramdass*, 530 U.S. at 169.   "[T]he Fifth Circuit has repeatedly refused to extend the rule in *Simmons* beyond those situations in which a capital murder defendant is statutorily ineligible for parole." *Green*, 160 F.3d at 1045 (quoting district court's opinion below).

V

Turner complains in claim 3 that the trial court's instruction that, in arriving at its verdict, the jury was not to consider the actual amount of time Turner would be required to serve, deprived him of a fair and impartial trial, in violation of the Due Process Clause of the Eighth and Fourteenth Amendments.[8]

---

[8]*See supra* note 5 for the text of the instruction.
Under the Texas law that took effect on September 1, 1999 (and that has since been superseded effective September 1, 2005, *see supra* note 7), the trial court was required to give this instruction at the defendant's request. *See* Tex. Code Crim. Proc. Ann. art. 37.071 § 2(e)(2)(B) (Vernon 1981 & Supp. 2005).   The instruction was not mandatory, however, at the time of Turner's trial.   *See Turner*, 87 S.W.3d at 113 ("The record reflects that appellant committed this offense before September 1, 1999, so he was not entitled to the parole law jury instruction currently mandated by Article 37.071, Section 2(e)(2)(B), or to any other judicially-crafted parole law jury instruction.").   In fact, the trial record "reflect[ed] that neither party objected to this instruction in the charge," *id.*, and it was "silent on how the parole law jury instruction became part of the trial court's charge," *id.* at 116.

A

Turner contends that, under *Simmons*, the length of a capital defendant's incarceration is "indisputably relevant" to the issue of future dangerousness, and a jury making such a determination "should be allowed to consider the fact that a defendant will spend at least 40 years incarcerated before becoming eligible for parole consideration." P. Br. 14 (emphasis omitted). He urges that the reasoning in *Simmons* applies equally to a capital defendant's 40-year parole ineligibility as it did to life-long parole ineligibility, and he was thus entitled to an instruction that permitted the jury to consider the possibility of his parole. *Id.* The state habeas court rejected Turner's contention. As it did in rejecting claim 2, it concluded that *Simmons* applies only when the state law prohibits a capital defendant's release on parole. *See* State Hab. Find. No. 75.

B

The Fifth Circuit has not only consistently held that the Constitution does not require that capital juries be informed about parole eligibility, it has re-affirmed this position several times. *See Woods v. Cockrell*, 307 F.3d 353, 361-62 (5th Cir. 2002); *Johnson v. Cockrell*, 306 F.3d 249, 256-57 (5th Cir. 2002); *Collier v. Cockrell*, 300 F.3d 577, 582-83 (5th Cir. 2002). In *Woods* the panel interpreted *Simmons* "to require that a jury be informed about the defendant's parole eligibility only when (1) the state argues

that a defendant represents a future danger to society, and (2) the defendant is legally ineligible for parole." *Woods*, 307 F.3d at 361. Indeed, as this court noted *supra* at § IV(B)(2), in *Ramdass* the Court held that "*Simmons* applies only to instances where, as a legal matter, there is no possibility of parole if the jury decides the appropriate sentence is life in prison." *Ramdass*, 530 U.S. at 169. Because Turner was statutorily eligible for parole, *Simmons* did not require that the trial court instruct the jury to consider his parole ineligibility. The state habeas court's finding was thus neither contrary to, nor an unreasonable application of, clearly established federal law.

## VI

Turner avers in claim 4 that he is entitled to habeas relief because the jury instructions at the punishment phase contained unconstitutionally vague terms, in violation of his Sixth, Eighth, and Fourteenth Amendment rights.

## A

The trial court submitted to the jury the familiar special issues prescribed by the Texas Code of Criminal Procedure.[9] Turner

---

[9]The special issues included:

> Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Carlton Akee Turner, would commit criminal acts of violence that would constitute a continuing threat to society?

> Do you find, taking into consideration all of

- 26 -

contends that, as applied at his sentencing proceeding, the special issues functioned as aggravating circumstances because they "circumscribe[d] the class of persons eligible for the death penalty." *Zant v. Stephens*, 462 U.S. 862, 878 (1983). He relies on the Supreme Court's conclusion in *Maynard v. Cartwright*, 486 U.S. 356 (1988), that "[a] sentence of death may not be imposed using a vague aggravating factor unless the state court cures such vagueness by applying a valid limiting construction, thereby providing the sentencer specific and detailed guidance concerning its scope."   P. Br. 22.   Turner complains that the word "probability" and the phrases "criminal acts of violence" and "continuing threat to society" have no common or uniform meaning, and that they are therefore unconstitutionally vague, in contravention of *Maynard v. Cartwright*.

The state habeas court concluded, in pertinent part, that the challenged terms require no special definitions.   St. Hab. Find. No. 89.   It also found that Turner's complaint "is grounded on the

_____

> the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, Carlton Akee Turner, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

R. 71-72; *see* Tex. Code Crim. Proc. Ann. art. 37.071 §§ 2(b)(1), (e)(1) (Vernon 1981 & Supp. 2005).

- 27 -

incorrect assertion that the special punishment issues in article 37.071 function as aggravating circumstances." *Id.* at 90. Rather, the aggravating circumstances that determine death-eligibility are found in Tex. Penal Code Ann. § 19.03 (Vernon 2003 & Supp. 2005), which defines the offense of capital murder. *Id.* at 91. The special issues do not determine death eligibility; they permit the jury to make an individualized determination of the appropriateness of the death penalty. *Id.* at 92. The trial court's refusal to provide the requested definitions posed no constitutional problems. *Id.* at 93. The future dangerousness issue did not violate due process or the Eighth or Sixth Amendment. *Id.* at 94.

B

In assessing whether the state habeas court's determination is contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, the court notes that the Fifth Circuit has consistently rejected similar complaints regarding the alleged vagueness of the very terms of which Turner complains, as well as similar terms. *See Hughes v. Johnson*, 191 F.3d 607, 615 (5th Cir. 1999) (holding that term "probability," as used in Texas capital sentencing special issues, does not require definition); *Woods v. Johnson*, 75 F.3d 1017, 1033-34 (5th Cir. 1996) (rejecting argument that terms used in special issues are "aggravating factors" and unconstitutionally vague absent definition); *James v. Collins*, 987 F.2d 1116, 1120 (5th Cir. 1993)

(holding that terms "deliberately," "probability," "criminal acts
of violence," and "continuing threat to society" "have a
common-sense core of meaning that criminal juries should be capable
of understanding") (internal quotation marks and citation omitted);
*Milton v. Procunier*, 744 F.2d 1091, 1095-96 (5th Cir. 1984)
(concluding that "deliberately," "probability," and "criminal acts
of violence" "have a plain meaning of sufficient content that the
discretion left to the jury" is "no more than that inherent in the
jury system itself").

In *Tuilaepa v. California*, 512 U.S. 967, 971-73 (1994), the
Supreme Court distinguished two aspects of the capital
decisionmaking process: the eligibility phase and the selection
phase.  The Court explained that, with respect to the eligibility
decision, the trier of fact must "convict the defendant of murder
and find one 'aggravating circumstance' (or its equivalent) at
either the guilt or penalty phase."  *Id*.  And the "aggravating
circumstance may not be unconstitutionally vague."  *Id*. (citing
*Godfrey v. Georgia*, 446 U.S. 420, 428 (1980)).  "'Once the jury
finds that the defendant falls within the legislatively defined
category of persons eligible for the death penalty, the jury is
then free to consider . . . myriad . . . factors to determine
whether death is the appropriate punishment.'"  *Id*. at 979 (quoting
*California v. Ramos*, 463 U.S. 992, 1008 (1983)).  Subsequently, in
*Buchanan v. Angelone*, 522 U.S. 269, 276 (1998), the Court observed

that, with regard to the selection phase of a capital sentencing process, "our decisions suggest that complete jury discretion is constitutionally permissible."

Under the Texas capital sentencing scheme, jurors make the eligibility decision at the guilt-innocence phase of the trial. *See Johnson v. Texas*, 509 U.S. 350, 362 (1993) (holding no constitutional deficiency in Texas sentencing scheme where statute narrowed group of eligible offenders); *Jurek v. Texas*, 428 U.S. 262, 276 (1976) (holding that narrowing function under Texas scheme was adequately performed at guilt/innocence stage by narrow categories of murder meeting statutory definition of capital murder); *Woods*, 75 F.3d at 1033-34 (recognizing that narrowing function is performed in Texas at guilt-innocence phase).[10]   The sentencing special issues thus do not perform the narrowing function required of the eligibility decision described in *Tuilaepa*

---

[10]Texas is a "non-weighing" jurisdiction. *See Hughes*, 191 F.3d at 623 (holding that Texas is not weighing state); *James*, 987 F.2d at 1120 (recognizing that, unlike a weighing jurisdiction, Texas sentencing juries are not called upon to weigh statutory aggravating factors against mitigating evidence). By contrast, a "weighing" jurisdiction requires a sentencing jury specifically to find that one or more statutory aggravating factors are present and then to weigh those factors against all the mitigating evidence to determine whether the balance favors imposition of the death penalty.   *See Williams v. Cain*, 125 F.3d 269, 281-83 (5th Cir. 1997) (providing comprehensive discussion of differences between "weighing" and "non-weighing" jurisdictions).   "In a 'weighing state,' the jury's consideration of an unconstitutionally vague factor at the final stage of death penalty proceedings violates the defendant's constitutional rights under the Fourteenth Amendment and requires that a resulting death sentence be vacated."   *Id.* at 281.

and require no definition. *See West v. Johnson*, 92 F.3d 1385, 1406 (5th Cir. 1996) (rejecting argument that Texas capital sentencing special issues work as aggravating factors and, therefore, require detailed definitions of terms employed therein); *Woods*, 75 F.3d at 1033-34 (rejecting argument that terms employed in Texas capital sentencing special issues are aggravating factors and, absent definitions of same, are unconstitutionally vague).

There is thus no clearly established federal law, as determined by the Supreme Court, declaring unconstitutionally vague any of the terms contained in the Texas special issues. Turner is not entitled to habeas relief on this basis. To the contrary, on several occasions the Supreme Court has at least implicitly acknowledged the propriety and commonsense meaning of the terms employed in the Texas capital sentencing scheme. *See Johnson*, 509 U.S. at 362-66 (recognizing broad scope of mitigating evidence that can be properly considered under commonsense meaning of terms employed in Texas capital sentencing special issues); *Pulley v. Harris*, 465 U.S. 37, 50 n.10 (1984) (recognizing that terms employed in Texas capital sentencing special issues are not impermissibly vague and have commonsense core meaning); *Jurek*, 428 U.S. at 264-65 (White, J., concurring) (recognizing that terms employed in Texas capital sentencing special issues have broad, commonsense meaning).

The state habeas court's conclusion is thus consonant with

this circuit's construction of the relevant Supreme Court cases concerning the vagueness of jury instructions in death penalty cases. In sum, clearly established federal law, as determined by the Supreme Court, does not require that Texas courts define "probability," "criminal acts of violence," or "continuing threat to society" when used in the special issues. The court therefore denies habeas relief based on claim 4.

VII

Turner maintains in claim 5 that the jury instruction at the punishment phase of his trial, which, consistent with the Texas Code of Criminal Procedure, did not inform jurors that their failure to reach a verdict would result in a life sentence, violates the Eighth and Fourteenth Amendments.

A

At the conclusion of the punishment phase, the trial court instructed the jury as follows, pursuant to Tex. Code Crim. Proc. Ann. art. 37.071 §§ 2(d)(2), (f)(2) ((Vernon 1981 & Supp. 2005):

> If you have not answered "yes" to special issue one then you shall not proceed to answer special issue two.
>
>         . . . .
>
> You may not answer special issue one "yes" unless the jury agrees unanimously, and you may not answer special issue one "no" unless 10 or more members of the jury agree.
>
>         . . . .

>       You may not answer special issue two "no"
>       unless the jury agrees unanimously, and you
>       may not answer special issue two "yes" unless
>       10 or more members of the jury agree.

R. 65-67; *see, e.g.,* Tex. Code Crim. Proc. Ann. art. 37.071 § 2(d)
(Vernon 1981 & Supp. 2005) (providing that "[t]he court shall
charge the jury that: . . . (2) it may not answer any [special
issue] 'yes' unless it agrees unanimously and it may not answer any
issue 'no' unless 10 or more jurors agree").

Turner alleges that the so-called 10-12 Rule[11] of the Texas
capital sentencing paradigm fails to inform jurors that their
deliberations can in one of the two following ways result in a
capital defendant's receiving a life sentence: one way is to answer
the special issues in a manner that results in such a sentence; the
other is to fail to reach a verdict, which has the same effect as
ten jurors' voting for the defendant in answer to the second
special issue.  Turner contends that Texas law that forbids the
court and parties from advising the jury of the effect of their
failure to reach a verdict violates the Eighth Amendment, as
interpreted in *Mills v. Maryland*, 486 U.S. 367 (1988), because it
leaves jurors to believe that their individual votes in favor of a
life sentence are worthless unless nine other jurors join them.  He
complains that the instruction "generates the danger that confused

---

[11]*See Alexander v. Johnson*, 211 F.3d 895, 897 (5th Cir. 2000)
(per curiam) ("In Texas, this is commonly called the '10-12
Rule.'").

jurors otherwise predisposed to hold-out on voting for a death sentence will conform to a 'majority-rule' mentality." P. Br. 26. Turner maintains that the jury should be informed that its failure to garner the requisite number of votes to answer either special issue results in a life sentence.[12]

The state habeas court rejected Turner's contention. In pertinent part, it distinguished *Mills*, State Hab. Find. No. 102, and it found that Turner had failed to demonstrate that the 10-12 Rule and the rule against informing jurors of the effect of a deadlocked jury were unconstitutional, *id.* at 107. The court concluded that neither rule violated the Due Process Clause of the Eighth Amendment. *Id.* at 108.

### B

Fifth Circuit precedent forecloses federal habeas relief on this ground. *See, e.g., Alexander v. Johnson*, 211 F.3d 895, 897 (5th Cir. 2000) (per curiam) (rejecting both Fourteenth and Eighth Amendment challenges, identical to those raised here, to Texas 10-12 Rule); *Woods v. Johnson*, 75 F.3d 1017, 1036 (5th Cir. 1996) (holding Texas capital sentencing scheme "wholly dissimilar to that involved in *Mills*"); *Jacobs v. Scott*, 31 F.3d 1319, 1328-29 (5th

---

[12]Turner also cites to *Lowenfield v. Phelps*, 484 U.S. 231, 239-40 (1988), without explanation. Turner refers the court to pages in *Lowenfield* that concern whether a supplemental jury instruction was coercive. No supplemental jury instruction was given at Turner's trial. Because Turner makes no clear contention with respect to *Lowenfield*, the court declines to consider it further.

Cir. 1994) (holding *Mills* inapplicable to Texas capital sentencing scheme).  As noted by the state habeas court, *Mills* is inapposite to the Texas sentencing regime.  State Hab. Find. No. 102.  In *Mills* the Supreme Court found Eighth Amendment error where the jury charge prevented jurors from acting on mitigating evidence unless they unanimously agreed that a particular factor was mitigating. *Mills*, 486 U.S. at 380.  As a consequence, a single juror could impose a death sentence.  *Id.* at 384.  Unlike *Mills*, however, pursuant to Tex. Crim. Code Proc. Ann. art. 37.071 § 2(f)(3) (Vernon 1981 & Supp. 2005), the trial court informed the jurors that they need not agree on what particular evidence supports their individual answers to the special issues. R. 66, 67.  Jurors could thus give effect to any mitigating evidence.  Furthermore, the trial court specifically instructed the jury pursuant to Tex. Code Crim. Proc. Ann. art. 37.071 §§ 2(d)(2), (f)(2), (g) (Vernon 1981 & Supp. 2005) that imposition of a death sentence required unanimous answers to the special issues.  *Id.*

Turner's contention that the Eighth Amendment defects in the 10-12 Rule would be cured by an instruction explaining the consequences of a deadlock is also without merit.  In *Jones v. United States*, 527 U.S. 373, 381-84 (1999), the Supreme Court rejected this argument with respect to the federal death penalty scheme.  In *Jones* the Court held that the Eighth Amendment does not require that a jury be instructed as to the effect of a "breakdown

in the deliberative process," because (1) the refusal to give such an instruction does not affirmatively mislead the jury regarding the effect of its verdict and (2) such an instruction might well undermine the strong governmental interest in having the jury express the conscience of the community on the ultimate question of life or death. *Id.* at 382.   Although *Jones* was limited to an Eighth Amendment challenge, after the Supreme Court decided *Jones*, the Fifth Circuit held that an argument identical to Turner's——that the 10-12 Rule in Texas violated a capital murder defendant's Eighth and Fourteenth Amendments——lacked merit. *See Alexander*, 211 F.3d at 897.

Because clearly established federal law, as determined by the Supreme Court, does not require a jury instruction about the consequences of garnering insufficient votes for either special issue, the state habeas court's findings are not contrary to or an unreasonable application of clearly established federal law.   Claim 5 is therefore denied.

C

Alternatively, the Fifth Circuit has consistently held that any ruling that the 10-12 Rule violates the Eighth and Fourteenth Amendments would be a new rule as defined in *Teague v. Lane*, 489 U.S. 288, 301 (1989) (plurality opinion), that could not form the basis for federal habeas corpus relief.   *See, e.g., Webb v.*

- 36 -

*Collins*, 2 F.3d 93, 95 (5th Cir. 1993) (per curiam).[13]

### VIII

Turner asserts in claim 6 that the Dallas County venire selection process violates his rights to an impartial jury consisting of a representative cross-section of the community because Hispanics, persons 18 to 34 years old, and persons from households with incomes under $35,000 are underrepresented in the jury pool.  The state habeas court declined to consider the merits of Turner's contention because he failed to raise it at trial and, pursuant to the Texas contemporaneous objection rule, procedurally defaulted the claim.  *See* State Hab. Find. Nos. 109-111.

This court "will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the merits of the federal claim and adequate to support that judgment." *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (emphasis omitted).  This 'independent and adequate state law' doctrine applies to procedural grounds and affects federal review of claims that are raised on

_____

[13]The Fifth Circuit recently stated that "[f]or AEDPA purposes, clearly established federal law is 'whatever would qualify as an old rule under our *Teague* jurisprudence,' as long as the old rule was decided by the [Supreme] Court." *Coleman v. Dretke*, 409 F.3d 665, 668 (5th Cir. 2005) (en banc) (per curiam) (quoting *Williams*, 529 U.S. at 412).  Accordingly, even assuming *arguendo* that the Texas 10-12 Rule violated the Constitution, as a new rule under *Teague*, the state habeas court's decision would not be "contrary to" or involve "an unreasonable application[] of *clearly established* federal law." 28 U.S.C. § 2254(d)(1) (emphasis added).

habeas review.  *Id.*  "To satisfy the 'independent' and 'adequate' requirements, the dismissal must 'clearly and expressly' indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims."  *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001) (citing *Amos*, 61 F.3d at 338-39).

First, the state habeas court "clearly and expressly" declined to review Turner's constitutional claim with respect to the Dallas County venire selection process because of the contemporaneous objection rule.  *See* State Hab. Find. Nos. 109-111 (stating that Turner did not raise venire selection complaint at trial, failure to object at trial waived error for review, and complaint was therefore procedurally barred).  And the state habeas court's discussion in the alternative of the merits of Turner's complaint does not nullify its holding of procedural default.  *See Cardenas v. Dretke*, 405 F.3d 244, 249 (5th Cir.), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. July 12, 2005) (No. 05-5304).

Second, the contemporaneous objection rule is well established and has long been recognized under Texas law.  *See Hogue v. Johnson*, 131 F.3d 466, 488 (5th Cir. 1997).  Texas courts apply the rule evenhandedly to the vast majority of similar claims.  *Id.*  The Texas contemporaneous objection rule thus constitutes an adequate and independent state ground that procedurally bars federal habeas review of Turner's claim.  *See Rowell v. Dretke*, 398 F.3d 370, 375

- 38 -

(5th Cir.) (concluding same), *cert. denied*, ___U.S. ___, 126 S.Ct. 103 (2005).

Because Turner defaulted this federal claim in state court pursuant to an independent and adequate state procedural rule, this court may not review it unless Turner can demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice." *Stokes v. Anderson*, 123 F.3d 858, 859 (5th Cir. 1997) (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)). "In general, to show cause, a petitioner must demonstrate 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Meanes v. Johnson*, 138 F.3d 1007, 1011 (5th Cir. 1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, the petitioner must demonstrate, "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis omitted). Turner does not allege, much less demonstrate, cause and prejudice. Alternatively, to demonstrate a "fundamental miscarriage of justice," the petitioner must establish "actual innocence." *See Neville v. Dretke*, 423 F.3d 474, 480-81 (5th Cir. 2005) (citing *Sawyer v. Whitley*, 505 U.S. 333, 336

(1992)).  Turner also fails to allege a risk of a fundamental miscarriage of justice and has not adduced evidence of actual innocence.  Accordingly, claim 6 is procedurally defaulted.

IX

Finally, Turner contends in claim 7 that the cumulative effect of the above-enumerated constitutional violations denied him due process of law, in violation of the Fifth and Fourteenth Amendments, even if no separate infraction by itself rose to that magnitude.

In *Derden v. McNeel*, 978 F.2d 1453 (5th Cir. 1992) (en banc), the Fifth Circuit held that in order for a federal habeas petitioner to prevail on a claim of cumulative error, he must establish that the state trial court committed an error, the error was not procedurally barred from habeas corpus review, and the error rises to a constitutional dimension.  *Id.* at 1458; *see Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005) ("'Meritless claims or claims that are not prejudicial or claims that are procedurally barred cannot be cumulated.'") (quoting *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996)) (alteration omitted)).  Turner has not presented specific arguments or reasoning that establish that he is entitled to relief.  He merely requests that if no single constitutional violation is sufficient of itself to obtain a writ, the court consider their cumulative effect.  *See* P. Br. 31-32. Furthermore, "[f]ederal habeas relief is only available for

cumulative errors that are of a constitutional dimension." *Coble v. Dretke*, 417 F.3d 508, 218 (5th Cir. 2005). Turner has not identified errors of constitutional dimension.

The state habeas court found that his individual claims were without merit and therefore concluded that he had failed to show that he was denied due process. *See* State Hab. Find. Nos. 141-143. Accordingly, this court cannot say that the state habeas court's rejection of Turner's cumulative error claim was objectively unreasonable.

* * *

Turner's habeas petition is denied, and this action is dismissed with prejudice by judgment filed today.

**SO ORDERED.**

March 20, 2006.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 41 -